Paul R. Steadman (*Pro Hac Vice*)
paul.steadman@us.dlapiper.com
Matthew D. Satchwell (*Pro Hac Vice*)
matthew.satchwell@us.dlapiper.com
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089
T: (312) 368-2135 | F: (312) 251-2850
T: (312) 368-2111 | F: (312) 236-7519

Martin M. Ellison (SBN 292060)
martin.ellison@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400, N. Tower
Los Angeles, CA 90067-4735
T: (310) 595-3000 | F: (310) 595-3300

Attorneys for Defendants
Alpinestars USA Inc. and Alpinestars S.p.A.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAINESE S.p.A.,<br><br>                    Plaintiff,<br><br>     v.<br><br>ALPINESTARS USA Inc. and<br>ALPINESTARS S.p.A.,<br><br>                    Defendants. | Case No. 2:24-cv-07066-PA-KS<br>Hon. Percy Anderson<br>Hon. Karen Stevenson<br><br>**DEFENDANTS ALPINESTARS USA INC. AND ALPINESTARS S.P.A.'S MOTION TO COMPEL**<br><br>Hearing Date To Be Set By Magistrate Judge, If Necessary |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

      A.    The Assignment History of the '065 Patent ........................................... 2

      B.    Alpinestars' Written Discovery Requests ............................................. 2

      C.    Dainese's Responses to Alpinestars' Requests .................................... 3

      D.    The Parties' Pre-Motion Conferences ................................................... 3

III.    LEGAL STANDARD ......................................................................................... 4

IV.     ARGUMENT ...................................................................................................... 5

      A.    The Assignment Information Is Relevant to Damages. ........................ 5

      B.    The Assignment Information Is Relevant to Standing. ........................ 6

      C.    Plaintiff's Counterarguments Lack Merit. ............................................ 8

V.      CONCLUSION ................................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) ...................................................................7

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
823 F.3d 615 (Fed. Cir. 2016) .....................................................................7

*Duran v. Cisco Sys., Inc.*,
258 F.R.D. 375 (C.D. Cal. 2009) ..................................................................5

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) .......................................................1, 5, 6

*Intell. Techs. LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) ....................................................................6

*Kajeet, Inc. v. Qustodio, LLC*,
No. SA CV 18-1519-JAK, 2019 U.S. Dist. LEXIS 227979 (C.D.
Cal. Oct. 22, 2019)........................................................................................5

*Lyft, Inc. v. Quartz Auto Techs. LLC*,
No. 21-cv-01871, 2022 U.S. Dist. LEXIS 211541 at *21-24 (N.D.
Cal. Nov. 18, 2022) ......................................................................................5

*Microsoft Corp. v. Mediapointe, Inc.*,
626 F. Supp. 3d 1129 (C.D. Cal. 2022).......................................................7

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007) ...................................................................7

*Neurografix v. Siemens Med. Sols. USA, Inc.*,
No. SA CV 10-1990 MRP (RZX), 2010 U.S. Dist. LEXIS 145995
(C.D. Cal. June 30, 2010) .............................................................................7

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ......................................................................................5

*Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*,
254 F.R.D. 568 (N.D. Cal. 2008) .................................................................6

*Unidisply S.A. v. Am. Elc. Sign Co.*,
    69 F.3d 512 (Fed. Cir. 1995) ...................................................................... 6

**Other Authorities**

Fed. R. Civ. P. 26 ......................................................................................... 4

Fed. R. Civ. P. 26(b)(1) ............................................................................... 5

Fed. R. Civ. P. 37(a)(5)(A) ...................................................................... 2, 9

DEFENDANTS' ALPINESTARS USA INC. AND ALPINESTARS S.P.A.'S MOTION TO COMPEL
CASE NO. 2:24-CV-07066-PA-KS

## I.    INTRODUCTION

Alpinestars respectfully requests an order compelling Plaintiff to supplement its Interrogatory responses and produce all documents regarding the assignment history of the sole asserted patent in this case, U.S. Patent No. 12,012,065 ("the '065 patent"). The public assignment history for the '065 patent indicates that it changed ownership twice, both times for little to no value, and both times with Plaintiff's founder Lino Dainese as a signatory. Alpinestars propounded interrogatories and requests for production (RFPs) in order to obtain further information about these transfers. Plaintiff admitted at the pre-motion teleconference that it is withholding the responsive information and documents that Alpinestars' written discovery seeks. Yet Plaintiff's stated reasons for this improper conduct strain credulity.

First, Plaintiff calls the information and documents irrelevant, though they plainly relate to damages and standing. Plaintiff has stated that it may seek damages in the form of a reasonable royalty, in which case the terms of the patent assignments would be relevant to several of the *Georgia-Pacific* factors that govern a reasonable royalty inquiry. And the scope of the patent rights transferred in the assignments will determine whether Plaintiff had standing to sue at all. Indeed, Plaintiff confirmed that the withheld information will shed light on standing when it suggested that an *in camera* review of the documents would reveal the patent rights actually transferred. Second, Plaintiff falsely alleges that Alpinestars will misuse any produced documents in concurrent proceedings in Italy. Plaintiff provides no basis for this accusation. In any event, as Alpinestars has repeatedly reminded Plaintiff, the Protective Order entered in this case safeguards against Dainese's alleged concerns by expressly stating that documents designated as "Confidential" cannot be used outside of these proceedings. Dkt. No. 38 at 2 (¶ 5).

In view of Plaintiff's intentional withholding of clearly relevant information and its meritless excuses for that improper conduct, Alpinestars respectfully requests not only that Plaintiff be compelled to immediately supplement its Interrogatory

responses and produce documents, but also that Plaintiff be made to pay Alpinestars' reasonable expenses in making this motion. Fed. R. Civ. P. 37(a)(5)(A).

## II.   BACKGROUND

### A.   The Assignment History of the '065 Patent

According to public records, the '065 patent has been the subject of two transfers in ownership. The first took place in 2022, when the inventor Lino Dainese assigned the rights in the patent to a company called D-Air Lab S.R.L. ("D-Air Lab") for "the sum of One Dollar ($1.00) or equivalent and other good and valuable consideration paid to the undersigned inventor." Ex. 1 (2022 Assignment). The second assignment happened two years later, in 2024, when D-Air Lab transferred the patent to Plaintiff at no cost. Ex. 2 (2024 Assignment). Notably, Lino Dainese—who Plaintiff's counsel stated at the pre-motion teleconference still maintains a "close relationship" with his namesake company—signed both agreements. He signed the first (2022) assignment in his personal capacity and the second (2024) assignment on behalf of D-Air Lab. Ex. 1; Ex. 2. Plaintiff therefore has access to any additional assignment documents, and in fact confirmed at the pre-motion teleconference that such documents exist and have been withheld.

### B.   Alpinestars' Written Discovery Requests

Alpinestars propounded interrogatories and RFPs directed to the nature of these assignments, which are typical in a U.S. patent litigation. Interrogatory Number 10 seeks—among other things—information about whether the assignment of the '065 patent had been accompanied by an exchange of some other valuable consideration. Ex. 3 at 28 (Plaintiff's Resp. to Alpinestars' Interrogatories]. Interrogatory Number 11 asks Dainese to identify "all agreements that convey any rights" in the '065 patent. Ex. 3 at 29. And Interrogatory Number 12 requests that Plaintiff "[e]xplain in as much detail as possible how Dainese came to be assigned the '065 patent from D-Air Lab S.R.L., the nature of the relationship between Dainese and D-Air Lab S.R.L., the value exchanged by Dainese and D-Air Lab S.R.L. for the assignment of the '065 patent,

and Lino Dainese's role and compensation for all of the same." Ex. 3 at 31. Seeking any additional documents related to the assignments, Alpinestars also propounded RFP Numbers 46 and 65. RFP 46 seeks documents regarding changes of ownership interest in the '065 patent, and expressly states that "[i]ncluded within this request are any documents showing or related to the compensation paid by Dainese to D-Air or Lino Dainese for assignment of the '065 or any Related Patent rights." Ex. 4 at 54-55 (Plaintiff's Resp. to Alpinestars' RFPs). RFP 65 requests documents about "financial support for, or interest in the outcome of, this Litigation." Ex. 4 at 74.

### C. Dainese's Responses to Alpinestars' Requests

Plaintiff responded to the RFPs with objections only. Ex. 4 at 54-55, 74. It did not promise to produce any documents and, as revealed at the pre-motion teleconference, Plaintiff in fact withheld responsive documents from production and failed to state in its responses that it was doing so.

For all three propounded Interrogatories, Plaintiff provided, in addition to a lengthy list of objections, just a single, one-sentence substantive response (below).

> Subject to and without waiving the aforementioned objections, Plaintiff states that the Asserted Patent was assigned by D-Air Lab S.r.l. to Plaintiff as declared in the Assignment Declaration dated June 14, 2024, as reflected in the United States Patent and Trademark Office Notice of Recordation of Assignment Document, Dated July 26, 2024.

Ex. 3 at 29-32.

### D. The Parties' Pre-Motion Conferences

Alpinestars sent Plaintiff a letter regarding the deficiencies in these responses (among others) and requested a meet-and-confer teleconference. Ex. 5 (Alpinestars' April 23, 2026 Letter). The letter requested that Plaintiff produce documents covered by RFPs 46 and 65 or at least amend its responses to those RFPs to indicate whether responsive documents exist and will—or will not—be produced. Ex. 5 at 2, 5.

Regarding the Interrogatories, Alpinestars pointed out that Plaintiff's one-sentence response failed to include even the known publicly available information—i.e., it makes no mention of the 2022 assignment signed by Lino Dainese—and therefore evidenced Plaintiff's withholding of pertinent information. Ex. 5 at 4. When the parties met and conferred on the issue, Plaintiff indicated that they would consider amending their responses after their forthcoming document production. But Plaintiff never did so. Alpinestars therefore sent another deficiency letter identifying deficiencies in Plaintiff's document production, including a continued failure to produce the requested assignment information. Ex. 6 at 2 (Alpinestars' May 19, 2026 Letter). The parties again met and conferred, at which point Plaintiff indicated that it would provide no further information about the assignments of the '065 patent rights.

The parties proceeded to the pre-motion teleconference with the Court. During the conference, Alpinestars explained the relevance of the assignment documents to the issues of damages and standing. Plaintiff responded with two arguments. First, Plaintiff argued that Alpinestars would misuse the assignment documents in concurrent proceedings in Italy (without explaining how such information could be misused in Italy). Alpinestars responded that the Protective Order in this case precludes that from happening. Second, Plaintiff declared that it had standing to sue and would be willing to so stipulate. To that, Alpinestars responded that a self-serving stipulation from Plaintiff about its own standing to sue would clearly not be meaningful or useful without the assignment documents. Plaintiff then offered to allow the Court only to review the assignment documents *in camera* to verify the assignment documents' contents.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26 authorizes discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Relevance is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on," any party's claim or defense. *Kajeet, Inc. v. Qustodio, LLC*, No. SA CV 18-1519-JAK (PLAx), 2019 U.S. Dist. LEXIS 227979, at *3 (C.D. Cal. Oct. 22, 2019) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Moreover, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Id.* (quoting *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009)).

## IV.    ARGUMENT

Patent assignment documents, and their related non-privileged correspondence, are among the most commonly-requested and commonly-produced documents in U.S. patent litigation. The patent owner bears the burden to show that it owns the asserted patent rights and has standing to assert them. The defendant typically wants to see anything that potentially relates to the value assigned to the patents by anyone in the assignment chain. Requests for these documents are typically uncontested.

### A.    The Assignment Information Is Relevant to Damages.

The patent assignment documents and information being withheld by Plaintiff provide direct evidence relevant to a reasonable royalty for the '065 patent. Plaintiff's discovery responses expressly state that Plaintiff may seek damages based on "a reasonable royalty" and that "Plaintiff's testifying expert witness on damages may base his or her opinions in part upon one or more of the factors outlined in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970)." Ex. 3 at 20-21. Evidence of patent assignment and license terms have repeatedly been found relevant and discoverable, and have been found to be directly related to multiple factors under the *Georgia-Pacific* framework. *See* Lyft, Inc. v. Quartz Auto Techs. LLC, No. 21-cv-01871, 2022 U.S. Dist. LEXIS 211541 at *21-24 (N.D. Cal. Nov. 18, 2022) (patent

license and transfer agreements "would be relevant under factors 4, 9, 10, and 12, of the fifteen non-exclusive factors in *Georgia-Pacific*"); *Unidisply S.A. v. Am. Elc. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (patent license terms "carry considerable weight in calculating a reasonable royalty rate"); *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 583 (N.D. Cal. 2008) (discovery of patent licensing/settlement negotiations "is reasonably calculated to lead to relevant admissible evidence").

Here, the discovery of documents related to the assignments takes on particular significance because there are no other documents available that could plausibly inform a reasonable royalty analysis. Plaintiff's written discovery responses state that "Plaintiff is not presently aware of any determination of any value… for the Asserted Patent" and that "there are no agreements comparable to a license" to the '065 patent that would otherwise be relevant to the *Georgia-Pacific* analysis. Ex. 3 at 17, 33. Similarly, Plaintiff's document productions to date include no licenses, settlement agreements, or other documents that could be used as a reference point for ascertaining a reasonable royalty. On their face, the publicly available documents indicate that the parties to the 2022 and 2024 assignments ascribed no value to the '065 patent. Plaintiff, however, clearly does not intend to proceed to trial in this case under a theory that its patent has no value. And at least one of the publicly available assignment documents refers to "other good and valuable consideration paid to the undersigned inventor." Ex. 1. Alpinestars is entitled to explore the full scope of these transfers so that it can properly assess Plaintiff's claims and form its own case regarding the damages to which Plaintiff might be entitled, if any.

### B.  The Assignment Information Is Relevant to Standing.

The patent assignment information and documents being withheld by Plaintiff are also relevant to the issue of standing. In patent litigation, standing to sue for infringement is limited to those parties who hold an exclusionary right to the patent. *Intell. Techs. LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024). ("[T]he question for [Article III standing] is whether a party has an exclusionary right.");

*Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007) ("Plaintiffs [that hold less than all substantial rights to the patent] lack constitutional standing."). An improper or incomplete assignment of rights can therefore divest a plaintiff of its right to file suit in the first instance. *See Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1366 (Fed. Cir. 2010) (a contract for the future transfer of patent rights is not sufficient to transfer all substantial rights and did not grant Article III standing). Assessing a party's standing requires not only an analysis of the patent assignments themselves, but also the documents attendant to those agreements. *See Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 621 (Fed. Cir. 2016) (finding that, when the ancillary agreement permitted the former owner to "retain[] significant control over [plaintiff's] enforcement and litigation activities," the former owner had not "convey[ed]' all of the substantial rights in the patents-[in suit."). Courts have dismissed patent infringement actions upon discovering that the plaintiff's chain of title was incomplete or that the assignment at issue failed to transfer all substantial rights. *See Microsoft Corp. v. Mediapointe, Inc.*, 626 F. Supp. 3d 1129, 1134 (C.D. Cal. 2022) ("The Court thus dismisses these claims on the basis that the allegations as pled create doubt about Defendants' chain of title."); *Neurografix v. Siemens Med. Sols. USA, Inc.*, No. SA CV 10-1990 MRP (RZX), 2010 U.S. Dist. LEXIS 145995, at \*21 (C.D. Cal. June 30, 2010) (finding that plaintiff was not granted all substantial rights such that it could not sue in its own name).

Here, Plaintiff has placed its ownership of the asserted patents squarely at issue by filing this infringement action. It cannot simultaneously claim the right to pursue this action while refusing to produce the very documents that could refute its standing to sue. The assignment documents at issue, including any ancillary correspondence and agreements, do not implicate any privilege, nor does their production impose an undue burden. To the contrary, a party that legitimately holds title to a patent through assignment should be able to produce the relevant instruments with minimal effort. Indeed, Plaintiff appears to have the documents on-hand already, as it offered during

DEFENDANTS' ALPINESTARS USA INC. AND ALPINESTARS S.P.A.'S MOTION TO COMPEL
CASE NO. 2:24-CV-07066-PA-KS

the pre-motion teleconference to allow the Court to review them *in camera*. An *in camera* review would be insufficient: Alpinestars is entitled to test the sufficiency of Plaintiff's claimed ownership through the ordinary tools of discovery and requires the relevant documents to do so.

### C.    Plaintiff's Counterarguments Lack Merit.

To date, Plaintiff has offered only two arguments as to why it should not be required to produce the assignment information and documents. Both lack merit. First, Plaintiff has argued that Alpinestars would misuse the assignment documents in concurrent proceedings in Italy. Plaintiff has never explained how the assignment document might be "misused" there. But the Protective Order in this case precludes that from happening anyway. *See* Dkt. No. 38 at ¶ 5 ("Material designated as confidential under this Order… shall be used only for the purpose of the prosecution, defense, or settlement of this action, and for no other purpose."). Second, Plaintiff has argued that it has standing to sue and would be willing to so stipulate. But parties don't get to stipulate to facts they bear the burden to prove, and avoid discovery. A stipulation from Plaintiff about its own standing to sue would clearly be an untenable solution, as it would secure for Plaintiff the benefit of standing when Alpinestars would have no way to test whether the assignment documents conferred such standing in the first place. Plaintiff has already conceded that the information and documents it withholds will shed light on this issue, because it offered to allow the Court only to review the assignment documents *in camera* to verify the assignment documents' contents. There is no reason to prevent Alpinestars from reviewing those documents, under the appropriate confidentiality designation, to test Plaintiff's theories.

## V.    CONCLUSION

For the foregoing reasons, Alpinestars respectfully requests an order compelling Plaintiff to supplement its Interrogatory responses and produce documents regarding the assignment history of the sole asserted patent in this case, U.S. Patent No. 12,012,065 ("the '065 patent"). Additionally, in view of Plaintiff's

8

intentional withholding of clearly relevant information and its meritless excuses for that improper conduct, Alpinestars respectfully requests that Plaintiff be made to pay Alpinestars' reasonable expenses in making this motion. Fed. R. Civ. P. 37(a)(5)(A).

Dated:  June 8, 2026

By: */s/ Martin M. Ellison*

Paul R. Steadman (*Pro Hac Vice*)
paul.steadman@dlapiper.com
T: (312) 368-2135 | F: (312) 251-2850
Matthew D. Satchwell (*Pro Hac Vice*)
matthew.satchwell@us.dlapiper.com
T: (312) 368-2111 | F: (312) 236-7519
**DLA PIPER LLP (US)**
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0089

Martin M. Ellison (SBN 292060)
martin.ellison@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Suite 400, N. Tower
Los Angeles, CA 90067-4735
T: (310) 595-3000 | F: (310) 595-3300

Peter D. VandeVort (SBN 359810)
peter.vandevort@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission St. Suite 2400
San Francisco, CA 94105
T: (415) 836-2500 | F: (415) 836-2501

*Attorneys for Defendants Alpinestars
USA Inc. and Alpinestars S.p.A.*